# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

UNITED STATES OF AMERICA

Case No: 1:20cr29-AW/GRJ

v.

TROY'TAVIOUS SHAQUILLE SCOTT
_____/

## STATEMENT OF FACTS

THE UNITED STATES OF AMERICA, by and through the undersigned Assistant United States Attorney, provides this factual basis for the acceptance of the guilty plea of Defendant Troy'Tavious Shaquille Scott. This Statement of Facts does not contain each and every fact relating to the commission of the offense charged in the indictment in the captioned case, but is a recitation of those facts necessary to provide a factual basis for Defendant's plea. Should this case proceed to trial, the government is prepared to present evidence as follows:

On August 4, 2020, at approximately 0036 hrs, several citizens began calling 911 to report shots fired in the Oaks Condominium, on the west side of Gainesville, Alachua County, Florida. Callers described hearing multiple (approximately 3) shots fired, and some callers reported seeing a newer model Chevy Silverado (white or silver in color) leaving the complex at a high rate of speed immediately after the shots were fired. Officers from the Gainesville Police Department (GPD) responded to the scene but were unable to locate a vehicle matching that description in the area.



These officers were also unable to locate any fired shell casings or projectiles at the complex.

At approximately 0129 hrs, GPD Officer Kooplikkattu observed a truck matching the suspect vehicle description parked at Gardenia Gardens Apartments, on the northeast side of Gainesville. Officer Kooplikkattu got behind the suspect vehicle and attempted to catch up to it so that he could conduct an investigatory stop. While doing so, Officer Kooplikkattu observed that the truck committed traffic infractions before turning into the parking lot of a Circle K gas station, located at the northeast corner of E. University Avenue and Waldo Rd. Officer Kooplikkattu activated his emergency lights to signal a traffic stop as he pulled in behind the suspect vehicle at the gas station, as the driver and sole occupant (later identified as Scott) quickly exited the suspect vehicle and began to distance himself from it. Officer Kooplikkattu gave Scott verbal commands to stop. Scott reluctantly complied with these directions. During initial contact with Officer Kooplikkattu, Scott advised that his wallet (with his driver's license) was inside the suspect vehicle, and he gave another officer permission to retrieve it for him. When GPD Officer Zayas retrieved Scott's wallet from the suspect vehicle, she smelled the odor of marijuana coming from inside the vehicle. As the investigatory stop continued, Scott

denied having any drugs inside the suspect vehicle and consented to a search of the vehicle.

As Officer Zayas began to search the suspect vehicle, Scott slipped off his sandals and took off running across Waldo Rd. Officer Kooplikkattu gave chase. During the foot chase he observed Scott reach into his waistband and the pockets of Scott's shorts then discard several items along a wood line on the eastern side of Waldo Rd. Scott ultimately fell to the ground and was taken into custody. During a search of Scott's person incident to arrest, officers located 21.5 grams of marijuana in Scott's pocket. Officers then searched the wood line where Scott was seen discarding items and there they located an Armscor .38 special caliber revolver (loaded with 3 live rounds and 3 spent shell casings in the cylinder); approximately $4,230 cash, a lanyard with keys to Scott's old BMW, and some VISA cards with Scott's name on them. All of these items appeared to have been recently discarded.

Officers then conducted a search of the suspect vehicle. Inside the vehicle, officers located a small baggie of marijuana and a fanny pack containing $13,625 cash in the driver's seat area. On the front passenger floorboard, officers located a backpack containing a Boito .410 gauge sawed-off shotgun, a Jiminez Arms 9 millimeter pistol, and several rounds of 9 millimeter and .410 gauge ammunition. The .410 gauge shotgun had a spent shotgun shell in the chamber. The 9 millimeter

pistol contained six (6) live rounds of ammunition in the magazine and an additional live round of ammunition in the chamber.

Post-Miranda, Scott admitted to ownership of the marijuana recovered from his person, but denied any knowledge of the firearms. Later, Scott stated that the vehicle he was driving was not his and that he was just carrying items for other people.

Scott's girlfriend, "E. S.," arrived at the scene of the arrest and spoke with officers. "E. S." lives in the Oaks Condominium where the shots fired were reported. "E. S." rented the suspect vehicle for Scott on August 3, 2020, at 1233 hrs. "E. S." advised that Scott had come over to her apartment at the Oaks at approximately 0100 hrs and that they had gotten into a verbal argument. "E. S." stated that she permitted Scott to use the suspect vehicle so that he could move his belongings from her apartment to his grandmother's house. "E. S." denied knowledge or ownership of the firearms.

GPD officers confirmed that Scott is a convicted felon, prohibited from possessing firearms. He was arrested on state charges and booked into the local jail.

Special Agent (SA) James Lane, of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) adopted the case for federal prosecution and collected the firearms and ammunition from GPD evidence. ATF SA Mace inspected the Boito

shotgun and determined that the barrel has been sawed down to 13 inches and the shoulder stock has been cut off to make it more like a pistol-grip. SA Mace determined that this shotgun qualifies as a short-barreled shotgun and is thus a firearm under the National Firearms Act (NFA) that is required to be registered in the National Firearms Registration and Transfer Record (NFRTR). A preliminary report from ATF has confirmed that Scott has never received permission to possess or manufacture an NFA firearm and the Boito shotgun recovered in this case has never been registered in the NFRTR.

Scott was federally indicted on October 21, 2020, and a warrant was issued for Scott's arrest, as he had bonded out of custody on the state charges. After the warrant was issued, law enforcement officers began attempting to locate and arrest Scott. As part of their efforts, officers had been monitoring Scott's Snapchat account. On October 28, 2020, officers observed Scott go live with a video on his Snapchat account. During this video, Scott could be seen driving around Gainesville and at times, posing with a two-toned (black and gray) semi-automatic pistol. From review of the video, officers were able to determine that Scott had arrived at the T-Mobile store, located at 1600 N. Main Street, in Gainesville. Officers responded to the T-Mobile store and maintained surveillance at that location until Scott exited the store and entered a white BMW Sporty Utility Vehicle (SUV). At that point, officers

moved in on Scott's location and took him into custody without incident. A search of Scott's person incident to arrest, revealed a single Acetaminophen/Oxycodone pill and $728 cash in his pocket. As the officers were taking Scott into custody they looked into the white BMW SUV and observed a two-toned (black and gray) semi-automatic pistol in plain view on the rear passenger floorboard. This pistol would have been within Scott's immediate and ready reach while he was seated in the driver's seat of the vehicle. The officers conducted a search of the BMW and recovered a Smith & Wesson .40 caliber pistol loaded with thirteen (13) rounds of .40 caliber ammunition. This pistol is the firearm Scott was seen posing with during his Snapchat video earlier that same day. Officers also located approximately 5.4 grams (gross) of crack cocaine in a baggie in the center console cup holder.

"E. S." again arrived on the scene of Scott's arrest. "E. S." advised that she had rented the BMW for Scott. "E. S." denied knowledge or ownership of the firearm and the drugs.

SA Mace examined all the firearms and ammunition recovered from Scott in both incidents. The .38 special caliber revolver was manufactured by Armscor for Rock Island Armory in the Philippines. The .410 gauge shotgun was manufactured by Boito in Brazil and imported by Sears, Roebuck & Co. The 9 millimeter pistol was manufactured by Jiminez Arms in Las Vegas, Nevada. The .40 caliber pistol

was manufactured by Smith & Wesson in Springfield, Massachusetts. Three (3) live rounds of .38 special caliber ammunition were manufactured by Winchester in East Alton, Illinois. Thirty-nine live rounds of 9 millimeter ammunition were manufactured by PMC in Seoul, South Korea. Thirty (30) live rounds of .410 gauge shotgun shells were manufactured by Remington in Bridgeport, Connecticut or Lonoke, Arkansas. Five (5) live rounds of .410 gauge shotgun shells were manufactured by Winchester in East Alton, Illinois. Four (4) live rounds of .410 gauge shotgun shells were manufactured by RIO in Irving, Texas. Thirteen (13) live rounds of .40 caliber ammunition were manufactured by Remington in Bridgeport, Connecticut or Lonoke, Arkansas. As these items were all manufactured outside the State of Florida and subsequently recovered within the State of Florida, they have been transported in and affected interstate and foreign commerce.

Prior to August 4, 2020, and October 28, 2020, Scott had been convicted of the following felonies in the State of Florida:

- Drugs: Possession of Controlled Substance on June 4, 2012; and
- Attempt to Commit Burglary of an Unoccupied Dwelling on June 1, 2015.

7

Each of these felonies was punishable by a term of imprisonment exceeding one year. Scott had knowledge that he had been convicted of these crimes and that each of them was punishable by a term of imprisonment exceeding one year at the time of his firearm possession on August 4, 2020, and October 28, 2020. In fact, Scott was sentenced to more than one year in custody with the Florida Department of Corrections related to each of his prior convictions.

ELEMENTS OF THE OFFENSE - COUNTS ONE AND THREE

1) The Defendant knowingly possessed a firearm or ammunition in or affecting interstate and foreign commerce;

2) At the time of the charged act, the defendant had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year;

3) At the time of the charged act, the defendant knew that he had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year.

ELEMENTS OF THE OFFENSE – COUNT TWO

1) The Defendant possessed a firearm;

2) The firearm was not registered to the Defendant in the National Firearms Registration and Transfer Record;

3) The Defendant knew of the specific characteristics or features of the firearm that made it subject to registration under the National Firearms Registration and Transfer Record.

_____
DARREN JOHNSON
Attorney for Defendant

3/1/2021
Date

_____
TROY'TAVIOUS SHAQUILLE SCOTT
Defendant

3/1/2021
Date

LAWRENCE KEEFE
United States Attorney

_____
CHRISTOPHER M. ELSEY
Florida Bar No. 0062475
Assistant U.S. Attorney
Northern District of Florida
401 SE First Ave, Suite 211
Gainesville, FL 32601
(352) 378-7365
Christopher.Elsey@usdoj.gov

3/1/2021
Date

9